UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULF SOUTH MEDICAL & SURGICAL INSTITUTE, INC. | CIVIL ACTION |
| VERSUS | NO. 11-1666 |
| EAGAN INSURANCE AGENCY, INC., ET AL. | SECTION "L" (1) |

## ORDER

The Court has pending before it three motions for summary judgment: Plaintiff Gulf South Medical & Surgical Institute, Inc. ("Gulf South")'s Motion for Partial Summary Judgment (Rec. Doc. 12); Defendant Eagan Insurance Agency, Inc. ("Eagan")'s Motion for Summary Judgment (Rec. Doc. 17); and Defendant Westport Insurance Corporation ("Westport")'s Motion for Partial Summary Judgment in Regard to Plaintiff's Claims for Fraud, Intentional Acts, Bad Faith, Penalties and Attorneys Fees and Motion for Summary Judgment Based on Peremption (Rec. Doc. 21). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

I.     BACKGROUND

This case arises out of an insurance policy covering five clinics operated by Plaintiff Gulf South. Defendant Eagan was Gulf South's insurance agent. Defendant Westport is Eagan's insurer. Eagan was Plaintiff's insurance agent for a number of years. Many of the facts surrounding the contractual relationship between Gulf South and Eagan are not disputed. Plaintiff operated five clinics at separate locations in Louisiana before Hurricane Katrina. Before 2005, Plaintiff had insurance policies in place, procured by its agent Eagan, that provided casualty coverage for all five locations, as well as additional business interruption and extra

expense ("BI/EE") coverage for all five locations. In May 2005, Eagan procured on Plaintiff's behalf an insurance policy from non-party James River Insurance Company for all five locations. However, unlike the earlier policies, the 2005 policy included BI/EE coverage for only one of Plaintiff's five locations. Plaintiff contends that it never instructed Eagan to change the BI/EE coverage and that Eagan negligently failed to maintain the same level of coverage for all five locations. No party disputes that Plaintiff was not actually provided a copy of the 2005 policy, by James River or by Eagan, until June, 2006 at the earliest.

On August 29, 2005, Hurricane Katrina struck the Gulf Coast. Plaintiff's five locations sustained varying degrees of physical damage. Plaintiff submitted claims to James River Insurance, and adjustment of the physical losses proceeded. Plaintiff also submitted documentation of its BI/EE losses for all five locations. On February 24, 2006, James River sent a letter to Plaintiff denying the BI/EE claims for four of the five properties. The letter stated:

> The purpose of this letter is to address Gulf South Medical & Surgical Institute's claim for business interruption losses.
> The Commercial Property Policy No. 00010038-1 issued by James River Insurance Company to Gulf South Medical & Surgical Institute, Inc. provided ***business interruption and extra expense coverage only for the location on 3705 Florida Avenue, Kenner, Louisiana***. A copy of the Declarations Page to the policy showing the locations covered and limits of insurance is enclosed for your convenience.[1]
> ...
> Based on the documents you have submitted to date, we are unable to determine the business income loss or reimbursable expenses, as defined above, generated from the 3705 Florida Avenue, Kenner location. Documents were provided for the other 4 locations listed on the policy however, ***as stated above, there is no Business Income Coverage for these other 4 locations***.

(Rec. Doc. 17-6 at 3-4) (emphasis added). The letter was received by Dr. Farber no later than

---

[1] Plaintiff contends that this Declaration Page was not included with the letter.

2

March 7, 2006, because on that date Dr. Farber sent a letter responding to James River Insurance's letter. (Rec. Doc. 26-5 at 2).

Plaintiff contends that after receiving the letter it inquired with Eagan regarding the denial on the basis of lack of BI/EE coverage, but that Eagan was non-responsive. Plaintiff also states that it requested copies of the policy but did not receive a copy (from James River Insurance) until June 6, 2006.

Plaintiff filed suit against Eagan, Westport, and others on April 3, 2007 in the 24th Judicial District Court for the Parish of Jefferson. The case was removed to this Court on July 18, 2011, on the basis of bankruptcy jurisdiction because Plaintiff had recently filed for bankruptcy.

## II.     PRESENT MOTIONS

The Court has pending before it three motions for summary judgment or partial summary judgment. First, Plaintiff moves for summary judgment in its favor that Eagan is liable for negligently failing to procure BI/EE coverage on all five of Plaintiff's clinic locations in the 2005 policy. Second, Defendant Eagan moves for summary judgment in its favor that Plaintiff's claim is perempted under Louisiana law. Eagan also moves for summary judgment on any claims of fraud that Plaintiff has pleaded. Third, Defendant Westport likewise moves for summary judgment in its favor on the ground that Plaintiff's claim is perempted under Louisiana law. Alternatively, Westport moves for partial summary judgment on Plaintiff's claims for fraud, intentional acts, bad faith, penalties, and attorneys' fees.

## III.    LAW AND ANALYSIS

### A.     Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Cross-motions for summary judgment such as these "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

These three motions for summary judgment overlap significantly. But because the issue of peremption is dispositive, the Court will address that issue first.

4

**B.     Peremption**

Plaintiff has filed suit against its insurance agent and the agent's insurer. "Under Louisiana law, an insurance agent has a fiduciary duty to the insured and he is liable for his intentional or negligent breach of this duty." *White v. Allstate Ins. Co.*, 513 F. Supp. 2d 674, 683 (E.D. La. 2007) (citation omitted). "In order to prevail on this cause of action, the Plaintiff must show that (1) an undertaking or agreement by the agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that he is properly insured." *Id.*[2]

Claims against an insurance agent "arising out of an engagement to provide insurance services" are subject to peremption and must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. Rev. Stat. § 9:5606(A).[3] This peremptive period "shall not apply in cases of fraud, as defined in Civil Code Article 1953." *Id.* at § 9:5606(C).[4] Louisiana courts interpreting § 9:5606 have explained when the one-year peremptive period begins to run:

> Prescription commences *when a plaintiff obtains actual or constructive*

---

[2]Plaintiff also alleges that Eagan "failed to specifically and/or promptly inform Plaintiff of the change in coverage" in violation of a duty to supply correct information.

[3]There is also an absolute three-year peremptive period that runs "from the alleged act, omission, or neglect." *Id.* at § 9:5606(A). That three-year period is not implicated by the facts of this case.

[4]The Louisiana Circuit Courts of Appeals are split as to whether the fraud exception applies to both the one-year and three-year peremptive periods, only the one-year period, or only the three-year period.

5

> *knowledge of facts indicating to a reasonable person that he or she is the victim of a tort*. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would enable him to bring a suit as long as there is constructive knowledge of same. ***Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry***. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.

*C's Discount Pharmacy, Inc. v. Pacific Ins. Co.*, No. 09-CA-217, p. 8 (La. App. 5 Cir. 1/26/10); 31 So. 3d 1103, 1107 (quoting *Roadhouse Bar-B-Que v. Certain Underwriters at Lloyds*, No. 2004-1697, p. 6 (La. App. 3 Cir. 5/4/05); 909 So. 2d 619, 623) (emphasis added). Whether a plaintiff insured had constructive knowledge of its insurance agent's error may, under certain circumstances, be a question of fact that cannot be resolved on motions for summary judgment. *See C's Discount Pharmacy*, p. 10; 31 So. 3d at 1108.

Plaintiff filed suit in state court on April 3, 2007, alleging that Eagan failed to procure the requested BI/EE coverage and did not inform Plaintiff of that failure. The issue in this case is whether, in the year preceding April 3, 2007, Plaintiff had actual or constructive knowledge of Eagan's alleged negligence. La. Rev. Stat. § 9:5606(A). If Plaintiff had actual or constructive knowledge of Eagan's negligence more than one year before filing suit, its claim against Eagan is perempted and must be dismissed, unless the fraud exception applies. *See id.* at § 9:5606(A), (C).

### 1) When Plaintiff Had Constructive Knowledge of Eagan's Negligence

Defendants Eagan and Westport argue that Plaintiff had constructive knowledge of any failure to procure requested BI/EE coverage as of February 24, 2006, when James River Insurance actually denied the claims on that coverage as to four properties. Defendants'

argument is straightforward: even if Plaintiff had not yet seen the written policy, the denial letter informed Plaintiff that it did not have all of the BI/EE coverage it thought it had. At that point, Plaintiff definitely should have known of a potential claim against Eagan for failure to procure that coverage and should have inquired further. And in fact, as Defendants point out, after receiving the letter Plaintiff admits that it "began trying to determine why no BI coverage was secured on the Four Uncovered Locations." (Rec. Doc. 12-4 at 2). Because the February 24, 2006 letter actually provoked an inquiry by Plaintiff, that suffices to show that Plaintiff had constructive knowledge of Eagan's failure to procure the requested BI/EE coverage and triggered the one-year peremptive period. And because Plaintiff filed suit on April 3, 2007, more than one year after the February 24, 2006 denial letter, Defendants argue the claim is perempted.

In response, Plaintiff argues that the April 3, 2007 suit was timely because the peremption clock did not begin to run until June 6, 2006, when Plaintiff received a copy of the policy from James River Insurance. Plaintiff seems to argue two propositions: first, Plaintiff makes the broad assertion that, as a matter of law, one-year peremption under § 9:5606(A) can ***never*** begin to run until an insured has a copy of its policy; and second, Plaintiff argues that in this particular case, factual disputes preclude summary judgment on the question of when Plaintiff had constructive knowledge of a claim against Eagan. Plaintiff's first proposition is legally unfounded, and the second proposition is unpersuasive.

First, Plaintiff cites no Louisiana case holding that receipt of a policy is a ***necessary*** precondition to trigger the one-year peremptive period. Certainly, a great many cases discuss whether, under specific circumstances, the receipt of an insurance policy is ***sufficient*** to give a

7

plaintiff constructive knowledge of an agent's negligence. *See, e.g.*, *White v. Allstate Ins. Co.*, 513 F. Supp. 2d 674 (E.D. La. 2007) (remanding because of factual issues with respect to whether claim against non-diverse agent was perempted; plaintiffs alleged that they did not receive a copy of the policy, the declarations page and coverage summary did not inform them of lack of flood coverage, and they could not have learned of the agent's misrepresentations until claim was actually denied); *C's Discount Pharmacy, Inc.*, at p. 6-10; 31 So. 3d at 1106-08 (reversing summary judgment because of factual issues as to whether plaintiffs should have realized agent's failure to procure correct coverage in light of cover letter sent by agent that did not highlight significant change in coverage); *see also Campbell v. Stone*, 509 F.3d 665, 671 (5th Cir. 2007) ("Because the Campbells read the cover letter and policy, and signed the flood rejection form, they had constructive knowledge of the contents of the policy at that time."). In these cases, receipt of the policy or other materials was discussed as one way in which a plaintiff could receive constructive knowledge of a procurement claim against its agent. But the cases cannot be fairly read as holding that receipt of the policy is a prerequisite to notify a plaintiff of a difference between the insurance terms it requested and the terms it received. There is no categorical legal requirement that a plaintiff actually receive a copy of his or her policy before the § 9:5606(A) one-year peremptive period begins to run.

Accordingly, the issue is when Plaintiff had constructive knowledge of Eagan's failure to procure BI/EE coverage. The critical event in that analysis is the February 24, 2006 claim denial letter. The parties have cited only one case even tangentially analyzing the significance of a

8

denial of a claim in terms of triggering the one-year § 9:5606 peremptive period.[5] In *Borden v. Allstate Insurance Co.*, the plaintiff suffered a flood loss in Hurricane Katrina but discovered that his flood policy had lapsed for non-payment of the renewal premium. 589 F.3d 168, 170 (5th Cir. 2009). He sued the insurer and then later joined his insurance agent. However, the agent was not added to the suit until "more than eighteen months after his flood damage claim had been denied," and summary judgment was granted in favor of the agent because the claim was perempted. *Id.* at 173. The Fifth Circuit had little difficulty affirming:

> The claimant's right accrues when the underlying act is discovered. Although [plaintiff] timely filed suit against [the insurer] in 2006, he did not join [the agent] until June 2007, more than eighteen months after his flood damage claim had been denied. [Plaintiff's] claim was perempted ***as a matter of law***.

*Id.* (emphasis added) The unspoken step in the Fifth Circuit's reasoning is that the plaintiff necessarily discovered the agent's negligence at the time his insurance claim was denied. *See id.* This makes sense; it is difficult to imagine any more clear notice to an insured that its agent failed to procure requested coverage than having a claim denied because the requested coverage does not exist.

The reasoning in *Borden* applies to Plaintiff's claim in this case. Here, the February 24, 2006 denial letter explicitly informed Plaintiff that the BI/EE coverage that it had requested for all of its properties did not exist as to four of the locations. No reasonable trier of fact could

---

[5]The dearth of relevant caselaw is understandable. In a typical case, a plaintiff learns of the difference between the requested and actual coverage when it files a claim and has that claim denied or underpaid. To avoid peremption, the plaintiff argues that he or she could not have discovered the error until the claim was denied. Thus, Plaintiff here must take the position that denial of the claim was not enough to give Plaintiff constructive knowledge of Eagan's negligence, in direct contrast to virtually every other plaintiff pursuing a procurement claim against their agent.

9

conclude that this was not "enough to excite attention and put the injured party on guard and call for inquiry." Plaintiff argues that the denial letter did not inform it that Eagan specifically was to blame for the missing coverage, as opposed to some other entity in the chain of acquiring the insurance; but the letter was sufficient notice that something was amiss with the procurement or issuance of the policy and that further inquiry was required, which is the definition of constructive knowledge. *See Schewe v. USAA Cas. Ins. Co.*, No. 06-881, 2008 WL 695035, at *4 (E.D. La. Mar. 11, 2008) (holding that peremption begins to run "when the claimant discovers the 'alleged act, omission, or neglect' which occurred, not the party responsible.").[6] Therefore, the one-year peremptive period began to run upon receipt of the February 24, 2006 letter. The undisputed record establishes that the letter was received no later than March 7, 2006, when Plaintiff responded to it. This suit was filed in state court on April 3, 2007, more than a year later. The suit was not timely. Plaintiff's claim against Eagan is perempted and extinguished, unless the § 9:5606(C) fraud exception applies.

### 2) Whether the Fraud Exception Applies

Pursuant to § 9:5606(C), "[t]he peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953." Article 1953 defines fraud as "a misrepresentation of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. "Fraud may also result from silence or inaction." *Id.*

Plaintiff articulates two theories of fraud that it contends defeat summary judgment on

---

[6]To the extent that there are factual disputes as to whether Eagan "lulled Plaintiff into complacency" by any pre-denial conduct, that complacency could not survive actual notice that Plaintiff had no BI/EE coverage for four of its properties.

10

peremption.  First, Plaintiff argues that "Eagan remained silent and failed to inform Plaintiff of the lack of BI/EE coverage on the Four Uncovered Locations, at any time after Katrina (or after the February Letter issued)."  (Rec. Doc. 31 at 20).  Second, Plaintiff argues that "Eagan also 'regenerated' an ACORD 125 application used to obtain the 2005 Policy with new particulars (higher deductible and new co-insurance limit), without obtaining a new signature from Plaintiff."  *Id.*

These contentions of fraud do not satisfy the § 9:5606(C) exception or defeat summary judgment for three reasons.  First, the allegations of silence after the original failure to procure the BI/EE coverage are not the kinds of fraud contemplated by the exception.  Second, the allegations regarding the 2005 Policy application are not part of Plaintiff's claim against Eagan and are entirely irrelevant to the issue of failure to procure BI/EE coverage.  And third, the more persuasive line of Louisiana authority holds that § 9:5606(C) only provides a fraud exception to the three-year absolute peremptive period, and not the one-year peremptive period.

      a)  **Alleged Fraud Based on Post-Procurement Silence**

Plaintiff argues that Eagan remained silent regarding the existence or absence of BI/EE coverage, and that this silence constitutes fraud for the purposes of § 9:5606(C).  But this alleged conduct occurred after the initial negligent failure to procure the requested BI/EE coverage.  Louisiana courts hold that this kind of subsequent conduct does not exempt Plaintiff from peremption pursuant to 9:5606(C).

Louisiana cases draw a distinction between a defendant's underlying fraudulent conduct and subsequent conduct that might be fraudulent for the purposes of § 9:5606(C) or analogous fraud exceptions to peremptive periods.  That is, "the jurisprudence applying fraud provisions in

11

malpractice actions applied it in cases where the alleged fraudulent act itself comprised the malpractice, unlike the case herein, where the fraud occurred after the legal malpractice took place." *Brumfield v. McElwee*, No. 2007-CA-0548, p. 7 (La. App. 4 Cir. 1/16/08); 976 So. 2d 234, 240.

For example, in *Brumfield v. McElwee*, the plaintiff had a personal injury case dismissed as abandoned, then filed a malpractice case against his attorneys.[7] The attorneys asserted peremption and in response the plaintiff argued that "the defendants failed to disclose to him the status of his case" which constituted fraud that rendered the peremptive period inapplicable. *See id.* The trial court rejected that argument and Fourth Circuit affirmed, concluding that the fraud exception applied only when "the alleged fraudulent act itself comprised the malpractice, unlike the case herein, where the fraud occurred after the legal malpractice took place." *Id.* Likewise, in *Smith v. Slattery*, the plaintiff's medical malpractice case was dismissed as abandoned and the plaintiff filed a malpractice suit against the attorneys. No. 38,693-CA (La. App. 2 Cir. 6/23/04); 877 So. 2d 244. The attorneys asserted peremption and the plaintiffs argued that the attorneys committed fraud by failing to hand over a copy of the order dismissing the original suit. *Id.* at p. 9; 877 So. 2d at 249. The Second Circuit held that this subsequent conduct did not fall within

---

[7]*Brumfield* analyzed the fraud exception to La. Rev. Stat. § 9:5605, which imposes limitations on claims against attorneys for professional malpractice. The fraud exception in § 9:5605 is identical to the fraud exception in § 9:5606. *Compare* La. Rev. Stat. § 9:5605(E) ("The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953."), *with* La. Rev. Stat. § 9:5606(C) (same). The two sections are very similar in other respects and courts frequently apply cases interpreting one statute to the other. *See* George Denégre, Jr. & Shannon S. Holtzman, *Professional Malpractice Peremption: Clarified Through Adversity*, 59 La. B. J. 176, 177 n.1 (Oct./Nov. 2011) ("In analyzing one professional malpractice statute[,] Louisiana courts often cite cases that have analyzed the other statute as supportive of their interpretations.").

the fraud exception, because the exception only applies "in cases where it was the fraudulent act itself that constituted the malpractice, and not for fraud in the actions taken after the legal malpractice has occurred." *See id.* at p. 8-9; 877 So. 2d at 249. Interpretations of the analogous § 9:5606(C) fraud exception are consistent with this distinction between an original fraudulent act that gives rise to the cause of action, and subsequent alleged fraud. *See Klein v. Am. Life & Cas. Co.*, No. 2001 CA 2336, p. 6 (La. App. 1 Cir. 6/27/03); 858 So. 2d 527, 531-32 (holding that allegations of "bait and switch" in original sale of annuities "fit the definition of fraud [in § 9:5606(C)] and raise the possibility their claims may not be perempted").

Here, Plaintiff alleges that Eagan remained silent after Hurricane Katrina and denial of the BI/EE claims. This kind of subsequent silence regarding the defendant's alleged original misconduct does not fall within the scope of the § 9:5606(C) exception to peremption. Accordingly, this argument does not preserve Plaintiff's claim against Eagan from peremption.

### b) Alleged Fraudulent Application "Regeneration"

Plaintiff's other theory of fraud apparently relates to duplicate or different copies of an application form for the 2005 policy. According to Plaintiff, discovery in this case revealed two different copies of an application form, containing different deductibles and coinsurance amounts. However, Plaintiff contends that its representative signed only one application, and therefore the second application form must have been "regenerated" by Eagan without Plaintiff's signature or consent. Setting aside whether this fact can support any inference of fraud, it is simply irrelevant to the question of the existence or absence of BI/EE coverage. The record is devoid of any suggestion that the two copies would have changed the BI/EE coverage on the 2005 policy, or that Plaintiff was in any way injured by the existence of these two pages. Thus,

13

while the two applications may be unexplained, they are simply a red herring and immaterial to the question of when Plaintiff learned that it did not have BI/EE coverage. This allegation does not excuse Plaintiff from the peremptive period.

### c) Applicability of the Fraud Exception to One-Year Peremption

Finally, the § 9:5606(C) fraud exception does not rescue Plaintiff's claim because the more persuasive line of authority in the Louisiana Courts of Appeal interprets the exception as applicable only to the three-year absolute peremptive period, and not the one-year period that commences on discovery of the defendant's conduct. *See generally* George Denégre, Jr. & Shannon S. Holtzman, *Professional Malpractice Peremption: Clarified Through Adversity*, 59 La. B. J. 176, 178 (Oct./Nov. 2011).[8] "In other words, there is not a hard and fast three-year limit on bringing the action for fraud, but there is a requirement that the action for fraud be brought within one year of discovery of the allegedly fraudulent acts." *Orea v. Bryant*, No. 43,229-CA, p. 4 (La. App. 2 Cir. 4/2/08); 979 So. 2d 687, 690.

Before 1999, the three-year limit in § 9:5606(A) was interpreted by the courts as peremptive, but the one-year period was interpreted as only prescriptive. *See Huffman v. Goodman*, No. 34,351-CA, p. 6-7 (La. App. 2 Cir. 4/4/01); 784 So. 2d 718, 724. Thus, the subsection (C) fraud exception, which referred in the singular to "the peremptive period," applied to the three-year period, which was the only peremptive period in the statute. In 1999, the Louisiana Legislature amended § 9:5606 by adding subsection (D), which states that "[t]he

---

[8]This issue was not raised by the parties in their briefing. Moreover, it involves making an *Erie* guess as to an unsettled question of Louisiana statutory interpretation. Accordingly, although it is a sufficient reason for granting summary judgment on the issue of peremption, the Court raises it only in the alternative.

one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods." 1999 La. Acts. 905. After the 1999 amendment, subsection (A) has *two* peremptive periods, rather than one prescriptive and one peremptive period. But subsection (C) was left in the singular, stating "[t]he peremptive *period* in Subsection A ... shall not apply in cases of fraud."

Consequently, "[d]ifficulty arises in applying subsection (C) after the 1999 amendment because subsection (A) now contains two peremptive periods." *Huffman*, No. 34,361-CA, at p. 10; 784 So. 2d at 727. The Court in *Huffman* reasoned that because subsection (C) was left in the singular, the Legislature did not intend to change its applicability to only the three-year peremptive period:

> The use of the singular rather than the plural form of the word "period" indicates that the exception is intended to apply only to the three-year period, again, as it did prior to the 1999 amendment which made the one-year period peremptive rather than prescriptive. Had the legislature intended to exempt cases of fraud from the one-year peremptive period as well as the three-year peremptive period, it could have easily amended subsection (C) to so provide or it could have further amended subsection (A) to exclude all actions of fraud.

*Id.* at p. 11; 784 So. 2d at 727. Therefore, the *Huffman* court held that "the fraud exception contained in subsection (C) does not apply to the one-year peremptive period in subsection (A), except insofar as any fraudulent representation or concealment may delay the start of the one-year period until the plaintiff discovered or should have discovered the alleged act, omission or neglect." *Id.*.

Other cases have confirmed the reasoning in *Huffman*. *See Orea v. Bryant*, 979 So. 2d 687, 690 (La. App. 2 Cir. 2008) ("[I]t is only the three-year peremptive period in (A), and not the one-year peremptive period, that is inapplicable to claims of fraud."); *Dauterive Contractors,*

15

*Inc. v. Landry & Watkins*, No. 01-1112, p. 15 (La. App. 3 Cir. 3/13/02); 811 So. 2d 1242, 1253 ("The presence of fraud notwithstanding, however, the one-year peremptive period is always applicable, and the malpractice action must still be brought within one year of the alleged act or within one year from the date that the alleged act is discovered or should have been discovered.") (interpreting La. Rev. Stat. § 9:5605).

A separate line of Louisiana Court of Appeal cases holds that the subsection (C) fraud exception applies to both the one-year and three-year peremptive periods. *See* Denégre & Holtzman, 59 La. B. J. at 178 (citing cases from the Louisiana First and Fifth Circuit Courts of Appeal). However, those cases are not persuasive. First, the reasoning is sparse-to-nonexistent and does not address the statutory history of § 9:5606. *See Klein*, No. 2001 CA 2336, at p. 6 & n.4; 858 So. 2d at 531-32; *Shermohmad v. Ebrahimi*, No. 06-CA-512, p. 5 (La. App. 5 Cir. 10/31/06); 945 So. 2d 119, 121-22. Second, conceptually the fraud exception is only necessary with respect to the three-year absolute peremptive period. A defendant ought not to benefit from its fraudulent acts, and if that fraud prevents a plaintiff from discovering its agent's malfeasance, subsection (C) relieves the plaintiff from the three-year peremptive period. But that fraud exception is unnecessary with respect to the one-year peremptive period; if a plaintiff does not discover the act or omission, then the one-year period never begins to run, but if a plaintiff discovers the act or omission despite its fraudulent nature, the plaintiff does not need any relief from the one-year peremptive period. Thus, it is unclear what purpose would be served by applying § 9:5606(C) fraud exception to the one-year period. *See* Denégre & Holtzman, 59 La. B. J. at 178 ("Further, the rationale for the fraud exclusion in the first place is that a plaintiff may be prevented by fraudulent acts from ever knowing the existence of a claim. Once a person has

16

notice of a claim, it no longer maters if the claim sounds in fraud or some other theory such as negligence: the plaintiff is on notice and must act."). Accordingly, the Court concludes that the Louisiana Supreme Court would reconcile this split between the appellate courts by holding that the § 9:5606(C) fraud exception to peremption applies only to the three-year peremptive period for claims against an insurance agent, and not the one-year peremptive period that begins to run when the plaintiff has actual or constructive knowledge of the agent's acts.

To sum up, Plaintiff had constructive knowledge that Eagan did not procure the coverage Plaintiff requested upon receipt of the February 24, 2006 letter denying the claims under that (non-existent) coverage. Plaintiff did not timely file suit "in a court of competent jurisdiction and proper venue within one year from the date" that it had constructive knowledge of its claim against Eagan.[9] La. Rev. Stat. § 9:5606(A). Plaintiff's claim is therefore perempted. Furthermore, for the reasons set forth above, the § 9:5606(C) fraud exception does not relieve Plaintiff from the effect of that peremptive period. This is a harsh result, but it is dictated by the applicable statutes.

---

[9] Plaintiff did attempt to assert a timely claim against Eagan in a previously-filed suit against James River Insurance in the Eastern District of Louisiana. However, because Plaintiff and Eagan are not of diverse citizenship, the Court struck Plaintiff's claim against Eagan for lack of jurisdiction. *See Gulf South Med. & Surgical Inst., Inc. v. James River Ins. Co.*, No. 06-3474, 2007 WL 1029490 (E.D. La. Mar. 29, 2007). Thus, the claim against Eagan was not asserted in a court of competent jurisdiction.

17

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's motion for summary judgment (Rec. Doc. 12) is DENIED and Defendants' motions for summary judgment (Rec. DocS. 17, 21) are GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 22nd day of May, 2012.

_____
U.S. DISTRICT JUDGE